May it please the Court, Michael Henshaw, Your Honor, for the appellants in this matter. This case really boils down to reasserting the long-standing California authorities that an insured is entitled to a defense from his insurance company whenever there is a mere possibility of coverage in the underlying complaint. In addition to that, when interpreting the insurance contract, which is really what this boils down to, the insurance language is supposed to be read broadly and the exclusionary language is supposed to be read narrowly. Trenches is just a small company that went and bought their CGL policy as required by their various customers to do the operations that they do. They clean grease out of hoods, which is a strange business, but there you go. And they expected to have a certain level of coverage when they bought that policy. Well, there's also a business of people collecting grease. There is. We actually had discussions about them expanding their business. It's a commodity. It is definitely a commodity. Ultimately, their franchise, they had purchased the franchise and when the franchisor terminated the contract, it left them sort of in the lurch. They were ultimately sued by their franchisor and tendered the claims to their insurance company on the expectation that they would have coverage for the trade dress allegations that were contained in the complaint. Hanover decided not to defend them or offer indemnity, and they based that on basically four different reasons. First of all, the claims didn't come within the scope of the coverage, and then the three separate exclusions prevented the coverage in this case. It's our contention that the district court relied on just the contract clause exclusion, which eliminates any claim that arises from a breach of contract as the sole reason to prevent the defense in this case. And it's our contention that the district court misread really the case law that leads up to what arising from means, and that in this case, the mere fact that there had once been a contract that had been terminated by the franchisor that allowed them to use trade dress in their advertisements and other things, once that contract was terminated and trenches then subsequently allegedly went and used that trademark, that's not arising from a breach of contract. It's an entirely separate happening after the contract that should have been covered under the language of the insuring documents. If we think that the language arising out of the exclusion is read more broadly than what you're proposing, does your client then lose? I don't believe so, Your Honor. The language can be read, the phrase arising from can be read broadly and still allow coverage in this case, because arising from should mean, according to the authorities, Church Mutual versus U.S. Liability Insurance being a good example, that if there's a separate basis for the claim, in this case it's a trade dress violation, that the separateness of that claim means that it does not arise from the contract. There's certainly clauses where the only way that the claim could exist is because there was a contract, and in that case, all the claims would arise from that contract. But in this case, trade dress is completely separate. They had a contract that allowed them to use it, but then that contract stopped, and then subsequently they violated the trade dress. That's a new harm that they inflicted, allegedly. It turned out not to be, but allegedly inflicted upon the underlying plaintiff in the case. And so there was certainly the possibility of a coverage under the complaint, and this was a 12b-6 motion. This was just a motion to dismiss that there was, you know, no possibility of any coverage here. And at the early stages in this, it was, there was only some, you know, there's the complaint and there's a joint report that specifically said they were accusing Trenches of using trade dress in their advertisement. And at that early stage, there was certainly the possibility of coverage, of a covered claim, and it should not have had a 12b-6 motion granted. That's your argument? That is the argument. The court made a very narrow finding on the contract clause, found that there was a scope of coverage that came within the scope of coverage, and in the contract clause that there was no possibility of coverage simply because of the breach of contract clause. And he read that language to mean anybody that Trenches had ever had a contract with, if something happened and they were sued by that entity, that they could no longer, that that clause would exclude any possibility of coverage for anything under that clause. And that's just much too broad of a reading. It leaves the defendants with, left Trenches with no possibility of coverage, essentially for any of the likely plaintiffs who might sue them. They're a company that only does work for companies that they contract with. There's nobody else that they would come into contact with. Wasn't the district court's holding a little bit narrower than that, though? This is an alleged breach of an agreement, which is the settlement agreement that arose out of the first dispute that they had with their franchisor. And the, it was Judge Guilford, wasn't it, below? Judge Guilford found that this alleged infringement of trade dress was something that they explicitly promised not to do in their settlement agreement. And so isn't the relationship a little narrower than, I guess I'm, I guess you need to convince me that I should be worried that Judge Guilford's rule was as broad as you're saying it was. The fact that they allegedly, first of all, if you're going to exclude something on a breach of contract, it sort of presupposes that there's, in fact, a breach of contract. And that was the allegation in the complaint that didn't bear out. And the trade dress and unfair competition is something that was separate from that. They don't, they didn't plead in the complaint that trade dress was one of the breaches of, that the use of the trade dress was one of the breaches of contract. They only pled in the complaint that after the contract had been terminated, that the trenches had violated various things and all lumped into one cause of action with trade dress. But when you say violated various things, you mean the settlement agreement in the case. No. The complaint alleges simply a trademark Lanham Act unfair competition cause of action. That's not the breach of contract cause of action. There's a separate cause of action for breach of contract that details the way that trenches allegedly breached the settlement agreement, which was in not reporting all the income that they earned, not keeping their database up to date. I think those are the two alleged breaches of the contract. But the trademark Lanham Act unfair competition, which is where the trade dress violations are found, that's a separate cause of action. It's the first cause of action. But it's not the breach of contract cause of action. And that's because it's a separate. Well, it's a separate cause of action, but does it flow from a breach of contract? It does not flow from the breach of contract. The breach of contract was the contract gave trenches the right to use the trade dress originally. And so if the contract just expired of its own time and then trenches used the trade dress, that also would not flow from the contract. It's subsequent to the contract. There is no contract in place on the day the trenches was alleged to have violated the trade dress of the appellant or of the hoods. He was really in breach of the contract from the get-go, wasn't he? No. That is lying outright. I don't believe that's true. And at the end of the day, they paid us money. This case was settled with a check coming to trenches. That doesn't mean anything. I understand. No, that doesn't mean anything. But they had people, trenches had, that organization had people that already when they signed the agreement had been convicted of crimes. Am I wrong about that? Yes. So we're going to wander off to something that's not been briefed and is really the underlying case. But the trenches, or excuse me, hoods accused trenches in violation of the original franchise agreement of having two owners who had been convicted of crimes. So the second owner, Mr. Merletus, who was brought into the organization after the franchise, the original franchise agreements had been signed, he never gave them any indication that he had not been convicted of a crime. He had, in fact, had a tax violation that had happened sometime in the past. I don't recall when. But he never signed the documents that I have never been convicted of a crime because hoods never asked him. Franchisors generally don't really care about a lot of things as long as you're paying them their money. And this is sort of that sort of case. How do I know that? Franchisors don't care about it. With Mr. Tosciatti, he had, when he was in the military, he had a court-martial. And whether or not that is the equivalent of a felony is a complicated legal question. He was actually prosecuted under the UCMJ for a violation that amounts to conduct unbecoming an officer. And whether or not that amounts to the equivalent of a felony, which was the question that had been asked by Franchis, have you ever been convicted of a felony, he had legal advice that said he had not been convicted of a felony. And so he did not represent that to him. It really has no bearing on this question, though, of whether or not the happenings that happened after Franchis had their contract terminated by hoods for an alleged violation of the settlement agreement. So I'm taken by this argument that there isn't a pled in the underlying case of breach of a settlement agreement regarding this trade dress infringement. But I have the first amended complaint now in front of me. Okay. And paragraph 34 of that complaint at page 7 of the document, and I apologize for not having a better record page reference for you. It might be page 44 of the record. It says the defendant's post-termination obligations under the franchise agreements include but are not limited to, and then there are several enumerated items. And then number four in that list is immediately discontinuing use of the hoods mark in any of hoods other proprietary trademark. And my question is, in light of that allegation in the first amended complaint, why was it unreasonable for Judge Guilford to conclude that the alleged trade dress use in related matters arose under a contract that your client had with the respondent? Well, if you go to the count five, which is the actual claim for breach of contract, in paragraph, which is page 59 of the record. Okay. Give me just a second. I'm still learning how to use this iPad. Okay. I'm there. Okay. And paragraph 99 is the defendant's breach of the settlement agreement by, and they list the failing to report royalty fees. Paragraph 100 is they breached the settlement agreement also by failing to pay fees under a separate section. Breach of settlement agreement by failing to, paragraph 101, is another allegation of failing to keep certain things up to date. And these are the breaches that they claim caused them these damages. Well, there's an incorporated by reference paragraph, paragraph 97, which might be a little thin. Right. But let's say that this court wanted to hold that Judge Guilford erred because he went past the paragraphs in count five of the First Amendment complaint. What's the best case we could cite for that proposition on those facts, do you think? The best case you could cite would be Church Mutual v. U.S. Lab, which is 347F280. And that case is what, that was a case where it was a company that made its business by, maybe having the facts mixed up in my head, but the court essentially said at the end of the day that when the fraud that was alleged in that case, it was a construction contract, and they allegedly fraudulently induced the payor, whoever was doing the business, to pay them up front or to change the payment terms and committed a fraud upon them. And the court said that the fraud is independent of the underlying contract. So it's the exact same language in the insuring agreement. It's, you know, maybe these form contracts these days. And the court said when there's this underlying, it's separate. And so if there's a completely separate basis for the claim that's not directly from the contract, it's not a breach of contract, it's separate from, then you have an unfavorable claim. And it's the same instance here. There's also the Zurich v. Killer Music. And in that case, there was a copyright infringement. There was an alleged contract to allow copyright use. The contract expired, and then down the road they used that copyright again. That also did not flow from the contract. There had been an existing contract to use the copyright, but the subsequent breach of the copyright rights was separate, and so that was also coverable because it did not come under the breach of contract exclusion. So really, the test should be if there is an independent basis for the coverage that does not depend upon the contract. Certainly if the only claim is you breached the contract in this way, that clearly falls under the breach of contract claim. But where there's a separate basis that could be brought by itself, then that should be a covered claim. Otherwise, you're going to allow smart plaintiffs to plead a breach of contract into their complaint, whether or not it actually exists, in order to prevent defendants who have a hard time defending themselves sometimes from getting their insurance coverage, which is going to allow them to defend what might be an otherwise spurious claim. I haven't met a lot of plaintiffs who like to prevent defendants from getting insurance money that would be available to pay the claim, but I take your point. It does depend. What does your settlement cover, so you get the money? What does the settlement cover? So they paid us. Yes. Who did they pay it for? They paid us for the – we had counterclaims that said we didn't breach the contract, you breached the contract. Not me. By Hoods and Fry. That Trenches didn't breach the contract, that Hoods had breached the contract, and that Trenches was harmed by the early termination of the franchise. I'll reserve my 55 seconds. I'm over. Thank you. Good morning, Your Honors. Dean Herman representing Hanover. Sounds to me like Hoods just wanted to get rid of Trenches, but let me go through my argument. I'd like to focus primarily on three issues today, and I will respond to some of what was just said. I'd like to address the breach of contract disclosure, of course, which was the basis for the district court's ruling, but also the fact that the First Amendment complaint never alleged any damages whatsoever for anything that would have triggered any coverage under the policy. I'll go back through that. And then last, the first publication exclusion, which was another exclusion that we raised. It clearly applies here. With respect to the breach of contract exclusion, the First Amendment complaint is a must-read in terms of the starting point for the analysis. I appreciate Your Honor raised it. If the complaint is read, I think it's beyond any doubt that it is premised entirely upon a series of contracts. There were a number of franchise agreements. Ultimately, there was a settlement agreement, all contracts. The entire complaint is premised on that. It's also very obvious that Hoods went to great pains to allege, or to seek, injunctive relief only in the beginning of that complaint when they were addressing any intellectual property rights. And only at the end of the complaint did they seek damages for royalty payments, royalties that should have been turned over. Hoods alleged that the principals of trenches had misappropriated the property and misrepresented and failed to disclose felony convictions. The original nondisclosure misrepresentation was for child pornography, which was a felony, according to Hoods and our research. And then later on, the next felony conviction was for tax fraud. They alleged that the contracts allowed them to terminate the contracts in the event of a felony. So we have the initial misrepresentation that induced the contract, and then their right to terminate it under the contract. They had both. That's their position. That's what the underlying suit was about, the contract exclusion. Trenches does not contest, cannot contest that any purported trade risk claim arises out of or is at least intertwined inextricably with the contract. Their initial entitlement to use and actually acquire some of the materials that this complaint seeks to have turned over was based on the franchise agreements. It all arose from that. As the district court pointed out in paragraph 70 of the First Amendment complaint, Hoods alleged, despite their obligation to do so under the franchise agreements, defendants have not ceased using Hoods federally registered Hoods mark and trade dress. So in those causes of action, most definitely, Hoods makes clear that they're relying on the contract. In the face of this series of contracts and these facts, what Hoods has done in their briefs, and I think again, is to take general statements of the law in California and try to essentially get around 30 years of appellate opinions in California and in the Ninth Circuit, most notably the city of Richmond case, which is a thoroughly reasoned case dealing precisely with the issues at bench with respect to the arising out of language. The Ninth Circuit extensively analyzed the language, the origins of the language. It rejected the but-for or causation test as being too narrow. It applied the exclusion in that case. It requires only a minimal connection or incidental relationship to a contract. That's how the contract exclusion applies. That is, I believe, circuit law at this point. And the court also in that case refused to apply the Partridge case, which was a homeowner's policy, an auto policy where someone had filed a gun trigger, which it found was a completely independent act of negligence. The other thing the city of Richmond in later cases, I think, point out is you look at the factual allegations when looking to see the relationship for purposes of arising out of. I mean, here the factual allegations all relate to the contract. There is not some separate independent factual basis for an independent claim. So whether they are pled as torts or contracts, it doesn't matter. The factual predicate relates to the contracts. The Zurich Killer Music case. That is a Ninth Circuit case. It does not discuss the meaning of arising out of. That case, Zurich, relied on three different coverage defenses, a late notice defense, which the court rejected flat out. Actually, it was a lack of notice defense, which the court rejected flat out. It also relied on California Insurance Code 533, which is a statutory exclusion for willful conduct. The court rejected that flat out. With respect to the breach of contract exclusion, the court actually found that as a matter of law, Zurich did not commit bad faith, acted in good faith, and, in fact, said it was reasonable to have relied on that exclusion and some of the cases that it relied on. It did not apply the exclusion. But factually, there is an ‑‑ and there is not reasoning in there. I will say it's not a reasoned opinion, but the facts are very different. Killer Music sold a music library that had music that, I guess, originated from multiple different sources, not just from the third party claimant. The third party claimant took the position in that case that certain music that had never been the subject of a contract with Killer Music had been included in that library. That is factually different in an important way to the extent anybody tries to harmonize the cases. I think fundamentally, the City of Richmond is a case that exhaustively analyzes the issue. Killer Music really doesn't. But factually, Killer Music is different and even found Zurich was reasonable under the circumstances. The Church case, that's a Southern District opinion. It was expressly rejected by the California Court of Appeal in the Merrill case we cite, which is another case that goes through a detailed reasoning of the arising out of language. Follows the City of Richmond. So I think it's really clear at this point. But to make it more clear, the more recent opinions have followed the City of Richmond. In our supplemental authorities, the letter we submitted, we cite a two-paragraph opinion from the Ninth Circuit that quickly applied the breach of contract exclusion, just as it should be here, we think, the strategics case, and followed the City of Richmond case, which is, I think, circuit law. We cited some other cases in our supplemental authorities. The last point, I guess, I'd like to make on the breach of contract exclusion was one that the District Court focused on to a degree, and that is the moral hazard issue. This is a business policy. It does not guarantee performance under contracts, and it should not be interpreted in a way that allows a policyholder to breach contracts with impunity and pass that loss on to the insurance company. That's not the purpose of the policy, and there's no reasonable expectation anybody could have that that's what was intended here. So that is, I think, why that is enough right there to affirm, but I will go a little further, because the law has developed and there's a case that was not available to the District Court or to us at the time we filed our appellant's brief, appellee's brief, and that is there's just no damages claim. Hoods took great care in this complaint to not seek damages for any intellectual property violations, trade risks or otherwise. In fact, what they did allege is they alleged that there was irreparable harm and they were entitled to injunctive relief. The other thing that's interesting is in this pleading, there are separate prayers for every count. So where they want to seek damages, namely the royalties for the breach of contract causes of action, they do so. They clearly do not do so in any trade risks or intellectual property claim. The case we cite in our supplemental authorities is the San Miguel v. State Farm case. It's a California court of appeal opinion. It's fairly recent and it directly addresses this damages issue. In that case, the court refused to infer or imply or speculate that a plaintiff was going to seek damages. The argument there was the same as here, that the claimant, the third-party claimant, could have sought damages if it wanted to. And this court said that doesn't matter. What matters is whether the third-party claimant actually sought damage. And what the court pointed out there was that what the third-party claimant sought was injunctive relief and pled that it had suffered irreparable harm and that it was without an adequate remedy at law. Same thing that Hood's pled, and that that is inconsistent with any sort of inference that there's a damages claim. So damages should not be inferred, cannot be inferred. This is an injunctive relief claim insofar as anything that might conceivably or arguably or theoretically come within the scope of the insuring agreement or policy. For that reason, the insuring agreement itself was never triggered. You never even get to the exclusions. Finally, I'd like to address the prior publication exclusion. This policy, like most general liability policies, has an exclusion for publications that are actionable that occur during the policy period if the publication was first made prior to the policy. Based on the record we have here, it's crystal clear. By the way, this policy was issued two weeks before Trenches got sued. I think your breach of contract exclusion is your best one. Okay. I agree. I'll make this short then if that's a suggestion. The argument I really want to address is this notion that there has to be a wrongful prior publication that's not in the policy. The court would have to write language into the exclusion, which it shouldn't do. But even if one assumes that's required, I do want to point out that the prior publications would necessarily have been wrongful. And the reason is the only way that Trenches ever was able to publish any of this intellectual property if it did so was based on its misrepresentations in the original application and its breaches by not disclosing the felony convictions. So any publication was wrongful by definition. So that's the point I wanted to make on that exclusion. One final point. I understand that we, we're lawyers at least, engage in a microscopic parsing of policy language. And I think if we step back a little bit here, as the general case law requires, there could be no reasonable expectation of coverage for anything like this. Again, this was not an illusory policy. The suggestion was made by counsel that this covers nothing. That's not true. This was a hoods-cleaning operation. If somebody got hurt, there are any number of things that could have come within this policy. It's not like that rock and roll band case that's cited, the touring case, where a policy was endorsed to exclude everything arising out of music. That's not this case. So I really think that there's no basis to not affirm the trial court. Thank you. Did it cover theft? I'm sorry? Did the policy cover theft? There's no theft coverage like a fidelity policy or first-party coverage like that. No. I'm just asking. No, no. Fine. I don't think so. It's a third-party liability policy. Thank you. Thank you. I just wanted to make one quick point, especially about was there coverage under the policy that we had a discussion about whether or not an intelligent plaintiff might plead around an insurance policy to prevent a defendant from having coverage. They just admitted that they very carefully pled their trademark allegations to not seek damages. Maybe not explicitly seek damages, but there is a broad prayer of whatever further relief the court may grant. So if they were being careful to keep hoods, keep trenches rather than having their coverage, that's one of the ways that you do it. You also do it by invoking this breach of contract clause. So it's not a completely ridiculous thought that this is what was going on there. And just lastly, on the moral hazard issue, the trenches, a lot's been made up of them being the bad guys in this. And actually the original breach of the franchise agreement was settled, and it's a settlement agreement, a subsequent settlement agreement, where hoods allowed them to take back their franchise and continue operating it, and then manufactured a breach essentially to kick them out. So hoods is not, or trenches is not really the bad guys here. As being much has been made of that. And I think it's irrelevant really to the insurance coverage issues, which is does an in a case like this where it might be close, but there certainly was an expectation that they would have coverage for this type of harm. So that's all I wanted to say. Thank you. Thank you, Your Honor. We're going to take a brief recess.
judges: Tigar, Pregerson, Nguyen